# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Buffets, Inc.; OCB Restaurant Company, LLC; Ryan's Restaurant Group, Inc.; HomeTown Buffet, Inc.; Tahoe Joe's, Inc.; and Fire Mountain Restaurants, LLC,

        Plaintiffs,

v.

Dean Leischow; BMO Harris Bank f/k/a M&I Marshall & Ilsley Bank; and U.S. Bank, N.A.,

        Defendants.

Civil No. 11-405 (DWF/TNL)

**MEMORANDUM OPINION AND ORDER**

_____

William F. Mohrman, Esq., Erick G. Kaardal, Esq., and James R. Magnuson, Esq., Mohrman & Kaardal, PA, counsel for Plaintiffs Buffets, Inc., OCB Restaurant Company, LLC, Ryan's Restaurant Group, Inc., HomeTown Buffet, Inc., Tahoe Joe's, Inc., and Fire Mountain Restaurants, LLC.

Seth J.S. Leventhal, Esq., LEVENTHAL, pllc; and Rolin L. Cargill, Esq. and William R. Skolnick, Esq., Skolnick & Shiff, PA, counsel for Defendant Dean Leischow.

Allen I. Saeks, Esq., Elizabeth A. Larsen, Esq., and Keith S. Moheban, Esq., Leonard Street and Deinard, PA, counsel for Defendant BMO Harris Bank, N.A.

Michelle Kreidler Dove, Esq., Bassford Remele; and Eric R. Sherman, Esq., and Peter W. Carter, Esq., Dorsey & Whitney LLP, counsel for Defendant U.S. Bank, N.A.
_____

## INTRODUCTION

This matter is before the Court on Defendant BMO Harris Bank f/k/a M&I Marshall & Ilsley Bank's ("BMO" or "M&I") Motion for Summary Judgment (Doc.

No. 164) and Defendant U.S. Bank, N.A.'s ("U.S. Bank") Motion for Summary Judgment (Doc. No. 170). For the reasons set forth below, the Court grants BMO and U.S. Bank's (together, "Defendant Banks") motions.

## BACKGROUND

On January 7, 2007, Plaintiff Buffets, Inc. ("Buffets")[1] entered into a contract with LGI Energy Solutions ("LGI") for energy management services, including bill pay. (Doc. No. 167, Moheban Decl. ¶ 2, Ex. A ("Wall Aff.") ¶ 16.) LGI's bill pay service consisted of reviewing Buffets' utility bills and creating an accounts payable report that would be sent to Buffets for approval. (*Id.* ¶¶ 17-18.) Once approved, Buffets would initiate a deposit to LGI's designated bank account via ACH or wire transfer, and LGI would pay the utility bills. (*Id.*; Doc. No. 176, Sherman Decl. ¶ 7, Ex. 5 at 60:1-6.)

During contract negotiations, Buffets requested that LGI set up the bank accounts to which Buffets would remit payments as fiduciary accounts, with Buffets as the named beneficiary. (Moheban Decl. ¶ 4, Ex. C ("Wall Dep.") at 111:1-16.) LGI refused to do so; instead, LGI agreed to the insertion of a contractual stipulation that LGI had a fiduciary duty to Buffets and no interest in Buffets' bill pay funds. (*Id.* at 111:14-16; Wall Aff. ¶¶ 19, 21; Moheban Decl. ¶ 5, Ex. D ¶¶ 3b, 5.) As a result, the accounts to which Buffets sent funds at U.S. Bank and M&I were standard business checking

---

[1] Buffets owns the following entities also named as plaintiffs: OCB Restaurant Company, LLC; Ryan's Restaurant Group, Inc.; HomeTown Buffet, Inc.; Tahoe Joe's, Inc.; and Fire Mountain Restaurants, LLC. (Wall Aff. ¶ 2.) Buffets and its related entities own and operate over 500 restaurants in 39 states. (*Id.* ¶ 7.)

accounts in LGI's name alone—not trust or fiduciary accounts.[2]  (Doc. No. 175, Sweeney Decl. ¶¶ 5-6; Moheban Decl. ¶ 7, Ex. F ("M&I Depository Agreement").)  There is no evidence that either Defendant Bank was provided with a copy of the contractual agreement between LGI and Buffets or was notified of the fiduciary relationship between them.

The agreement between LGI and Buffets did not include any restrictions on how the funds were to be held; thus, Buffets' bill pay funds were commingled with money belonging to LGI and other LGI customers.  (Moheban Decl. ¶ 3, Ex. B ("Leischow Dep.") at 40:17-25.)  For example, Buffets remitted not only bill pay funds (that were subject to a fiduciary obligation) but also direct payments to LGI (for its energy management services) to the accounts at U.S. Bank and M&I.  (*Id.* at 38:12-21; Doc. No. 187, Mohrman Decl. ¶ 4, Ex. 4 ("Senger Dep.") at 26:5-7, 121:17-22.)  Other LGI customers made similar payments and bill pay deposits to the same designated accounts.  (Leischow Dep. at 40:17-20.)  Consequently, Buffets' funds were not segregated from those of other LGI customers, and customer deposits for bills were not held separately from LGI's earned fees.

Until November 3, 2008, Buffets remitted payments to LGI's account at U.S. Bank.  (Sherman Decl. ¶ 11, Ex. 9 ("Smith Dep.") at 126:9-15.)  The account was an ordinary business checking account in the sole name of LGI, without any designation that

---

[2]   Buffets transferred money to LGI's Account "3321" at U.S. Bank and later to Account "3116" at M&I.  (Moheban Decl. ¶ 6, Ex. E at 3-4.)

LGI was acting in a fiduciary or representative capacity.[3] (Sweeney Decl. ¶ 6.) In October 2007, Defendant Dean Leischow ("Leischow") requested a line of credit on behalf of LGI to cover delays in customer reimbursements for advance payments to utilities. (Sweeney Decl. ¶ 17, Ex. 10 at USBL00000184.) U.S. Bank extended a $1,000,000 line of credit to LGI on October 26, 2007. (*Id.* at USBL00000180.) In November 2007, U.S. Bank began monitoring LGI's accounts due to a pattern of overdrafts, followed by wire transfers to cover the overdrafts, which had begun prior to the extension of the line of credit.[4] (Mohrman Decl. ¶ 53, Ex. 53.) Based on the monitoring, U.S. Bank concluded that the overdrafts were not a sign of improper activity. (Mohrman Decl. ¶ 36, Ex. 36 ("Sweeney Dep.") at 168:23-169:12.) The line of credit was reduced to $512,012 in February 2008. (Sweeney Decl. ¶ 15.) LGI closed the line of credit in April 2008 when it transitioned its banking to M&I. (Sweeney Dep. at 131:12-132:3.)

In April 2008, LGI received a three million dollar loan[5] from M&I, secured by a personal guaranty from Leischow. (Mohrman Decl. ¶ 9, Ex. 9 at 4-5.) As a condition to

---

[3] LGI also maintained a separate operating account at U.S. Bank ending in "7551." (Mohrman Decl. ¶ 41, Ex. 41.)

[4] While the overdrafts had not previously been a cause for concern because they were consistently covered by a prompt transfer of funds into the account, the monitoring was implemented after the line of credit was extended because of U.S. Bank's increased exposure risk. (Mohrman Decl. ¶ 36, Ex. 36 ("Sweeney Dep.") at 91:21-92:14, 94:10-25.)

[5] The line of credit was later increased to $3.5 million. (Doc. No. 168, Howard Decl. ¶ 2, Ex. A.)

the credit agreement, LGI also agreed to open general depository accounts at M&I for use in conjunction with LGI's bill pay service.[6] (Mohrman Decl. ¶ 10, Ex. 10.) Starting on November 3, 2008, Buffets began depositing its utility payments into LGI's M&I account ending in 3116 ("Account 3116"). (Wall Aff. ¶ 27.) During the following month, M&I noted activity in LGI's accounts that triggered an investigation into possible check kiting.[7] (Mohrman Decl. ¶ 26, Ex. 26 at M&I02252.) After concluding that the activity was not fraudulent check kiting, M&I chose to allow LGI's accounts to remain open with daily monitoring. (Moheban Decl. ¶ 13, Ex. L at 77:17-25; Mohrman Decl. ¶ 29, Ex. 29.)

On December 10, 2008, LGI sent notification to its customers that it was ceasing business operations. (Wall Aff. ¶ 31.) LGI did not make any more utility payments on Buffets' behalf after December 10, 2008. (Senger Dep. at 281:1-22; Mohrman Decl. ¶ 19, Ex. 19.)

On January 2, 2009, Plaintiffs sued LGI, M&I, and Leischow in state court. *Buffets, Inc. v. LGI Energy Solutions, Inc.*, Civ. No. 09-548, (Doc. No. 1, Ex. 2 ("Compl.")). Buffets alleged that it remitted payments to LGI that were not applied toward Buffets' utility bills, requiring Buffets to make additional payments directly to the utility companies. (*Id.* ¶¶ 10-12; Wall Aff. ¶ 33.) Buffets also sought to recover funds

---

[6] In addition, LGI opened a separate operating account ending in "3072." (Mohrman Decl. ¶ 11, Ex. 11.)

[7] Check kiting is a process through which an account holder falsely inflates the balance of an account by depositing a check from another banking institution so as to take advantage of the processing time in order to effectively obtain a short-term "loan" before depositing funds into the latter account to cover the amount of the check.

5

remaining in LGI's M&I account that Buffets had transferred to LGI for the payment of its utility bills. (Compl. ¶ 13.)

Defendant M&I removed the case to the United States District Court for the District of Minnesota, where it was then referred to United States Bankruptcy Court. *Buffets, Inc. v. LGI Energy Solutions, Inc.*, Civ. No. 09-548 (Doc. Nos. 1 & 40). Buffets later amended the Complaint to add a Uniform Fiduciaries Act claim and common law claims against M&I and to drop all claims against LGI (the bankruptcy debtor). (Doc. No. 27, Am. Compl.) Plaintiffs amended a second time to add U.S. Bank as a defendant. (Doc. No. 41, Second Am. Compl. ¶ 18.) The claims against Defendants BMO and U.S. Bank center on LGI's alleged improper use of Buffets' funds, which Buffets claims to have deposited with Defendant Banks in a fiduciary capacity. (*Id.* ¶¶ 17-18.) M&I also asserted two cross-claims against Defendant Leischow: a guaranty claim; and a claim for indemnification, arising from Leischow's personal guaranty agreement. (Doc. No. 30 ¶¶ 106-10.)

After Plaintiffs dropped their claims against LGI, the case was transferred to this Court. (Doc. No. 80.) Later, pursuant to Plaintiffs' and Leischow's Stipulation of Dismissal, the Court dismissed all of Plaintiffs' claims against Leischow without prejudice. (Doc. Nos. 161 & 162.)

Plaintiffs' remaining claims against Defendant Banks are: Unjust Enrichment (Count II); Conversion (Count III); Tortious Interference with Contract (Count IV); Constructive Trust (Count VII); Participant in Breach of Fiduciary Duty and Breach of Trust (Count VIII); Participation in Misappropriation (Count X); Conversion of Funds

Belonging to a Third Person (Count XI); Violation of Minn. Stat. § 520.01, *et seq.*, Uniform Fiduciaries Act (Count XII); Violation of Common Law Duties to Principal of a Fiduciary Account (Count XIII); Negligence (Count XIV); "Special Deposit" Claim (Count XV); and Breach of Fiduciary Duty based on "Special Deposit" (Count XVI).[8] (Second Am. Compl.)

## DISCUSSION

**I.     Summary Judgment Standard**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th

---

[8] Counts II, III, and XI are only asserted against BMO.

Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.    Summary Judgment Motions**

    **A.    UFA Claim (Count XII)**

Buffets asserts a claim that Defendant Banks violated the Uniform Fiduciaries Act ("UFA") as codified at Minnesota Statutes §§ 520.01-520.33. The UFA governs a bank's liability for deposits involving fiduciaries. To establish a claim under the UFA, a plaintiff must show that a deposit was made: in the name of a fiduciary and designated as such (Minn. Stat. § 520.07); in the name of a principal (Minn. Stat. § 520.08); or into a fiduciary's personal account (Minn. Stat. § 520.09). The record indicates that the deposits were made into checking accounts in LGI's name, with no designation of fiduciary status. (Sweeney Decl. ¶¶ 5-6; M&I Depository Agreement.) Therefore, Buffets' UFA claim must satisfy the elements of section 520.09, which provides:

> If a person who is a fiduciary makes a deposit in a bank to the person's personal credit of checks drawn by the person upon an account in the person's name as fiduciary, or of checks payable to the person as fiduciary, or of checks drawn by the person upon an account in the name of the principal if the person is empowered to draw checks thereon, or of checks payable to the principal and endorsed by the person, if empowered to endorse such checks, or if the person otherwise makes a deposit of funds held as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of an obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of an

> obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

Minn. Stat. § 520.09.

Defendant Banks argue that: (1) Buffets' deposits were not subject to a fiduciary duty once they were commingled in the same accounts as money belonging to LGI and other LGI customers; (2) Defendant Banks had no notice of LGI's fiduciary duty to Buffets and no duty to inquire because Minnesota law presumes that funds in a personal account belong to the account holder; and (3) the banks acted in good faith because they did not act dishonestly or with actual knowledge of a breach of fiduciary obligation. BMO adds that Buffets fails to identify a single bank employee who acted with actual knowledge of a breach of fiduciary duty or who acted dishonestly or made a "conscious effort to avoid knowledge."

Buffets argues that bad faith can be attributed to a bank if it acts in a "commercially unjustifiable" manner. Buffets cites Defendant Banks' failures to close LGI's accounts (after observing overdrafts and potential check kiting by LGI) as evidence that the banks acted in a commercially unjustifiable manner. Buffets also argues that because Defendant Banks were aware of the nature of LGI's business[9] and the separation of LGI's operating account from the client funded account, they were aware of

---

[9] Buffets contends that LGI qualifies as a "money services business" under the Bank Secrecy Act and the Anti-Money Laundering Act, which require that the Bank exercise "enhanced due diligence" in inquiring about the fiduciary status of the funds.

LGI's fiduciary duty to Buffets. In addition, Buffets asserts that liability under the UFA is not limited to designated fiduciary accounts or segregated funds.

Still, to establish a violation of section 520.09, a plaintiff must show that the bank was aware of a fiduciary relationship and had knowledge that processing a transaction was a breach of fiduciary duty or amounted to acting in bad faith. Minn. Stat. § 520.09. First, the plaintiff must demonstrate that the banks were aware of the fiduciary relationship between Buffets and LGI. *Id.* It is undisputed that neither bank was shown a copy of the contract between Buffets and LGI; moreover, the accounts in question were not set up as designated fiduciary accounts, and funds belonging to LGI and to other LGI customers were commingled in the same accounts to which Buffets made deposits. (Sweeney Decl. ¶¶ 5-6; M&I Depository Agreement; Leischow Dep. at 38:12-21, 40:17-20; Senger Dep. at 26:5-7, 121:17-22.) Therefore, there is no evidence in the record to support the contention that either Defendant Bank had notice of LGI's fiduciary duty to Buffets or that LGI's accounts were fiduciary in nature.

Buffets must also demonstrate that the banks acted with knowledge that processing the transactions in question constituted a breach of LGI's fiduciary duty or amounted to acting in bad faith. Minn. Stat. § 520.09. While Buffets cites knowledge of behavior that it contends would create a duty to inquire, it fails to identify any specific employee who processed a specific transaction with actual knowledge that the transaction constituted a breach of LGI's fiduciary duty to Buffets. Under Minnesota law, funds in a personal account are presumed to belong to the account holder and can be used by the account holder for any purpose. *Estate of Whish v. Bienfang*, 622 N.W.2d 847, 850

10

(Minn. Ct. App. 2001). Because of the presumption of ownership and because the accounts in question contained commingled funds, Buffets cannot show actual knowledge on the part of Defendant Banks.

Moreover, a court cannot find bad faith under the UFA "if the bank was acting honestly." *Rheinberger v. First Nat'l Bank of St. Paul*, 150 N.W.2d 37, 41 (Minn. 1967) (citing Minn. Stat. § 520.01, subd. 6). Buffets implies that, in addition to acting in a commercially unjustifiable manner, M&I acted dishonestly by failing to close LGI's accounts after discovering potential check kiting in order to continue generating fees from LGI. Notably, however, M&I launched an investigation, implemented monitoring, and concluded that LGI was not engaged in check kiting. (Mohrman Decl. ¶ 26, Ex. 26 at 1; Moheban Decl. ¶ 13, Ex. L at 77:17-25; Mohrman Decl. ¶ 29, Ex. 29.) The Court concludes that Buffets is unable to demonstrate bad faith on the part of the banks.

In light of the foregoing and the undisputed record evidence, Buffets cannot fulfill each of the required elements to establish a violation of the UFA. The Court finds that no genuine issue of material fact exists with regard to whether Defendant Banks had notice of LGI's fiduciary duty to Buffets or whether Defendant Banks acted in bad faith or with actual knowledge that any withdrawals constituted a breach of LGI's fiduciary obligation to Buffets. Moreover, Buffets cannot substantiate its claim that LGI's accounts with BMO and U.S. Bank were fiduciary in nature. Because the Court concludes that no genuine issues of material fact exist, Defendant Banks are entitled to summary judgment on Count XII.

B.     **Common Law Claims**

The eleven remaining claims are:  Unjust Enrichment (Count II); Conversion (Count III); Tortious Interference with Contract (Count IV); Constructive Trust (Count VII); Participant in Breach of Fiduciary Duty and Breach of Trust (Count VIII); Participation in Misappropriation (Count X); Conversion of Funds Belonging to a Third Person (Count XI); Violation of Common Law Duties to Principal of a Fiduciary Account (Count XIII); Negligence (Count XIV); "Special Deposit" Claim (Count XV); and Breach of Fiduciary Duty based on "Special Deposit" (Count XVI).

1.     **Fiduciary Duty Claims**

In addition to its statutory UFA claim, Buffets asserts several common law claims based on a fiduciary duty theory, including constructive trust, participant in breach of fiduciary duty and breach of trust, violation of common law duties to principal of a fiduciary account, and breach of a fiduciary duty based on "special deposit."  Defendant Banks argue that all common law claims are abrogated by the UFA.

At a minimum, the UFA implies intent to abrogate common law claims based on fiduciary obligations by providing that the rules of law and equity shall apply only to situations not covered within the UFA.  Minn. Stat. § 520.12.  Courts have also held that the common law duty to inquire into transactions is eliminated by the UFA.  *Bradley v. First Nat'l Bank of Walker, NA*, 711 N.W.2d 121, 124 (Minn. Ct. App. 2006); *In re Lauer*, 98 F.3d 378, 383 (8th Cir. 1996), *aff'd on reh'g as modified on other grounds*, 371 F.3d 406 (8th Cir. 2004).  Because the obligations of banks regarding funds held in trust are governed by the UFA, the instant case is governed by the UFA, and the common law

claims based on fiduciary duty (if not all remaining claims) are abrogated by the statutory claim. Even assuming, without deciding, that the remaining common law claims are not abrogated, they fail on the merits as discussed below.

### 2. Unjust Enrichment

Buffets asserts an unjust enrichment claim against BMO for retaining funds that were transferred from LGI's account to make payments on its $3.5 million loan from M&I. An unjust enrichment claim cannot be based solely on facts that indicate the defendant benefited from the actions of the plaintiff, but must also show that the enrichment was unjust which "could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Where the plaintiff had the opportunity to request terms to protect its interests and failed to do so, the court will not find unjust enrichment. *Id.* The record contains no evidence that M&I had knowledge of the terms of the contract between LGI and Buffets or notice that the funds in LGI's account belonged to Buffets. To the contrary, Minnesota law requires the presumption that the funds in LGI's accounts belonged to LGI. *Whish*, 622 N.W.2d at 850. Moreover, the undisputed facts indicate that Buffets negotiated the terms of its contract with LGI and failed to include any terms restricting how the funds were to be held. (Wall Dep. at 111:1-16; Wall Aff. ¶¶ 19, 21; Moheban Decl. ¶ 5, Ex. D ¶¶ 3b, 5.) Because Buffets cannot show that any loan payments were unlawfully retained by the bank, BMO is entitled to summary judgment on the unjust enrichment claim.

### 3. Conversion Claims

Buffets also asserts two conversion claims against BMO. Conversion is "an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quoting *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948)). The undisputed facts show that the client funded accounts were held in LGI's name alone and were not designated as trust accounts. (M&I Depository Agreement at M&I00342-43.) The record also indicates that M&I did not exercise any control over the expenditures made from the accounts and that M&I was contractually obligated by the Depository Agreement to honor transactions authorized by designated signers. (*Id.* at M&I00344.) Therefore, Buffets cannot demonstrate willful interference, and BMO is entitled to summary judgment on the conversion claims.

### 4. Tortious Interference with Contract

Buffets further claims that Defendant Banks tortiously interfered with the contract between Buffets and LGI by causing LGI "to use Plaintiff Buffets' funds for purposes other than the payment of utility invoices." (Second Am. Compl. ¶ 88.) "Under Minnesota law, the elements of tortious interference with contract are (1) the existence of a contract, (2) the tortfeasor's knowledge of the contract, (3) the tortfeasor's intentional causation of a breach of the contract, (4) a lack of justification for the tortfeasor's action, and (5) damages resulting from the breach." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 395 F.3d 921, 924 (8th Cir. 2005). Buffets is unable to point to any evidence of intentional causation of a breach of the contract. The record also fails to establish that Defendant

Banks were aware of either the terms of Buffets' contract with LGI or that LGI was in breach of that contract by failing to make utility payments on behalf of Buffets. To the contrary, the undisputed facts show that LGI was in total control of transfers from the account and that neither Defendant Bank directed or attempted to direct LGI's expenditures. (Sherman Decl. ¶ 10, Ex. 8 at 182:23-183:7; M&I Depository Agreement at M&I00344.) Because there is no evidence that Defendant Banks intentionally caused LGI to breach its contract with Buffets, Defendant Banks are entitled to summary judgment on Buffets' tortious interference claim.

### 5. Special Deposit Claims

Additionally, Buffets asserts a "special deposit" claim (Count XV) and a breach of fiduciary duty based on "special deposit" claim (Count XVI) against Defendant Banks.[10] A "special deposit" is "made under an agreement that the bank is to apply it to a particular purpose, or is to perform some specified service for the depositor in respect to it." *Hjelle v. Veigel*, 210 N.W. 891, 891 (Minn. 1926). The undisputed facts show that there were no communications or agreements between Defendant Banks and Buffets regarding Buffets' deposits into LGI's accounts; thus, Buffets cannot establish that it made any "special deposit" with the banks. (Sherman Decl. ¶ 26, Ex. 23 at 15; Wall Dep. at 46:21-24.) Because there is no evidence that either Buffets or LGI directed Defendant Banks to apply the deposits "to a particular purpose" or to perform a specified service

---

[10] The Court notes that it has previously addressed the abrogation of claims based on a purported fiduciary duty above.

related thereto, Defendant Banks are entitled to summary judgment on Buffets' "special deposit" claims.

### 6. Negligence

Buffets claims that Defendant Banks were negligent in allowing Buffets' deposited funds to be used for a purpose other than paying Buffets' utility invoices. The necessary elements to maintain a negligence claim are: (1) the existence of a duty of care; (2) breach of duty of care; (3) causation; and (4) injury. *See Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982). Under Minnesota law, a bank does not have a duty to ensure that an accountholder applies withdrawn funds according to the terms of a contract between the accountholder and a third party. *Farmers State Bank of Fosston v. Sig Ellingson & Co.*, 16 N.W.2d 319, 325 (Minn. 1944). Because Defendant Banks did not owe such a duty of care to Buffets, they are entitled to summary judgment on the negligence claim.

### 7. Participation Claims

Lastly, Buffets asserts claims against Defendant Banks for participation in breach of fiduciary duty, breach of trust, and misappropriation. Such claims must fail, however, because Buffets cannot establish actual knowledge or bad faith on the part of Defendant Banks as discussed with respect to the UFA claim above. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294-95 (2d Cir. 2006). Therefore, Defendant Banks are entitled to summary judgment on the participation in breach of fiduciary duty, breach of trust, and misappropriation claims.

For the reasons discussed above, the Court concludes that Defendant Banks are entitled to summary judgment with respect to Counts II-IV, Counts VII-VIII, and Counts X-XVI.

### C. BMO's Cross-Claims Against Defendant Dean Leischow

Because the Court has determined that BMO is not liable to Buffets on any asserted claim, BMO's indemnity claim against Defendant Leischow is moot. (*See* Doc. No. 47 ¶ 130.)

The Court further concludes that BMO is entitled to judgment on its personal guaranty claim against Leischow. (*See id.* ¶¶ 126-29.) There is no dispute that Leischow signed the guaranty agreement and that LGI defaulted on the line of credit. (Doc. No. 168, Howard Decl. ¶ 4, Ex. C.) Moreover, Leischow concedes liability on the loan guaranty. (Doc. No. 186 at 2 n.2.) BMO is thus entitled to judgment against Leischow in the amount of $3,346,404.33. (Howard Decl. ¶ 17.)

Consequently, no claims remain for trial.

### ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant BMO Harris Bank's (f/k/a M&I Marshall & Ilsley Bank) Motion for Summary Judgment (Doc. No. [164]) is **GRANTED** as follows:

    a. BMO is entitled to judgment on its guaranty cross-claim (Doc. No. [47]) against Dean Leischow in the amount of $3,346,404.33.

      b.     BMO is entitled judgment with respect to Counts II, III, IV, VII, VIII, X, XI, XII, XIII, XIV, XV, and XVI of Plaintiffs' Second Amended Complaint (Doc. No. [41]).

2.     Defendant U.S. Bank, N.A.'s Motion for Summary Judgment (Doc. No. [170]) is **GRANTED**. U.S. Bank is entitled to judgment with respect to Counts IV, VII, VIII, X, XII, XIII, XIV, XV, and XVI of Plaintiffs' Second Amended Complaint (Doc. No. [41]).

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 26, 2012        s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge